James P. Sherwood v. Christian Jordan.

(No. 821.)

SURETY, PRIVILEGE OF.—The privilege of a surety not to be sued unless the principal has been previously sued, or to be simultaneously sued, must be taken advantage of in abatement. It is not available in bar.

CO-SURETY ON SHERIFF'S BOND, RIGHT OF CONTRIBUTION.— Where the sureties, according to the terms of the bond, were liable for the entire amount of the bond, and they did not undertake to bind themselves respectively separately to pay different or various sums, the right of contribution amongst the co-sureties exists and can be enforced.

INTEREST.— The doctrine that interest is recoverable by a surety is adopted as being in accord with a proper equitable construction of the rights of the parties, and in harmony with the spirit of both law and equity.

APPEAL from Galveston county. Opinion by WALKER, P. J.

STATEMENT.— This suit was brought by the appellee, Jordan, against the appellant, Sherwood, to recover the alleged *pro rata* liability of the defendant as one of the plaintiff's co-sureties on the official bond of one Derks, as sheriff, alleged to be a defaulter in respect to the county taxes collected for Galveston county, and not paid by the said sheriff as he was by his duty and the bond of office required to do.

The plaintiff alleged that when Derks defaulted, he, plaintiff, made terms of compromise with the county authorities in behalf of the sureties of said Derks, and, in pursuance of the same, he paid in full satisfaction of the

liability of the sureties for the defalcation of Derks (which in fact amounted, according to the proof, to between five and six thousand dollars) the sum of $2,740.02.

On the trial the evidence as to the payment by the plaintiff to the county treasurer showed the payment of $1,980, and also a certificate of indebtedness of Galveston county for $214.06, which said payments the receipt, which was produced, recited as having been made by the plaintiff to the county treasurer. The plaintiff also proved the payment to the county attorney as fees as such officer $250 on account of his claim on account of the settlement and compromise of the matter referred to. The aggregate of payments thus made, according to the evidence, embraced in the foregoing items, amounted to $2,414.06.

The petition alleges that the sureties of Derks upon his official bond are mainly insolvent, except only the defendant and two others, who are named. Plaintiff alleges that the defendant, for his share in a proper contribution in the premises, is indebted to him in the sum of $550, with eight per cent. interest thereon from the date of the settlement which he had made, as has been stated, with the county authorities, to wit, 11th day of September, 1874.

The items of payments upon which plaintiff in his petition seems to base his claim to the above *pro rata* contribution of $550 are as follows: $2,195.02 paid to said county treasurer; $250 to Walter Gresham, district attorney, for his fees, as already stated; $125 for copies of papers, and $150 to Ballinger, Jack & Mott, his attorneys, for representing the matter before the county court of Galveston in effecting a compromise for the benefit of the sureties, making a total of $2,740.02.

The statement of facts contains the record evidence of the proceedings had in the premises before the county court on the proposition of the plaintiff to compromise the liability of the sureties, the terms proposed and the acceptance of the same, which need not, perhaps, be fully stated in this place.

The cause was submitted to the court without a jury upon the law and the facts. The defendant pleaded by a general demurrer and the general issue. The demurrer does not seem to have been urged before the court, and may therefore be deemed to have been waived. Judgment was rendered for the plaintiff for the sum of $514.49. From this judgment the plaintiff appealed, and assigned sixteen grounds of error.

OPINION.— Of the numerous grounds which are relied on by the appellant for the reversal of the judgment, a due and proper consideration of this appeal requires a consideration only of such as have been presented in the brief and argument of appellant's counsel, and to these we shall mainly confine our remarks.

The seventh assignment of error is as follows:

"The court erred in giving judgment for the plaintiff as a surety against his co-surety, the defendant, when it is not alleged in plaintiff's petition that the principal in said bond was insolvent or beyond the jurisdiction of the court."

This proposition is predicated upon article 1449, P. D., as follows; "The principal and the indorser or surety upon any instrument in writing may be joined in the same suit; *but no judgment* in any such suit shall be rendered against the indorser or surety, *unless judgment* is at the same time rendered against the *principal*, except when the plaintiff discontinues as to the principal because he resides beyond the limits of the state or because he is insolvent, in which case he may discontinue and take judgment."

And also article 1426, P. D., as follows: "No person shall be sued as an indorser, as guarantor or as security unless suit shall have been or is simultaneously commenced against the principal, except in cases where the principal resides beyond the limits of the state or in a county that is not organized, or where he is insolvent."

This ground of error is not maintainable. There was no exception taken by the defendant in the court below to the

want of any necessary or proper party; there was no plea in abatement to that effect, nor exception to such defect as shown upon the face of the record; the answer of defendant was only a general demurrer and a general issue, and it does not appear that the demurrer was presented to the court or relied on by the defendant. If, however, the general demurrer had been relied upon, it seems clear from the authorities that it could not have prevailed. The privilege of a surety to be sued unless the principal has been previously sued, or be simultaneously sued, must be taken advantage of in abatement; it is not available in bar. Ritter *v.* Hamilton, 4 Tex., 325. And see, also, Petty *v.* Cleveland, 2 Tex., 404.

In addition to these considerations, which are deemed to be conclusive of the question which is urged under this assignment, it is to be added that it appears in evidence that the principal in the bonds, Derks, the sheriff, was notoriously insolvent. Evidence as to this fact was introduced by the plaintiff without objection by the defendant, so far as is shown by the record, and there is no testimony in the record which tends to qualify or impeach the force of this statement. It being apparent from the learned and able opinion in the case of Petty *v.* Cleveland, *supra*, by Justice Wheeler, that the legal question involved is not a fundamental one which reaches to the substantial ground or cause of action, it is clear that if it had been a technical error even to have omitted the principal as a party unless by the averment of facts which would bring the case within the statutory exceptions, nevertheless, as the evidence developed facts showing that the principal, by reason of his insolvency, need not have been sued, that the error would have been merely abstract, and such as would not require the reversal of the judgment.

The eighth, ninth and tenth assignments of error present the following point:

"The court erred in giving judgment for the plaintiff and against the defendant, when, from the proof, plaintiff

*had not paid* more than his fixed and stipulated portion of the bond; it appearing from the proof that there had been no breach of the bond as between the co-sureties, inasmuch as plaintiff had paid *nothing in excess* of his stipulated portion of the same."

This proposition assumes the existence of the unequal liability on the part of the sureties on this bond, and it presents a legal question which, as we conceive, is not supported, or, indeed, is not presented under a proper interpretation of the terms of the bond itself.

The sureties, according to the terms of the bond, were liable for the entire amount of the bond, and they did not undertake to bind themselves respectively, separately to pay different or various sums.

If our construction of the bond in this respect be correct, obviously, then, there remains no basis on which to rest the complaint of the appellant under the above-quoted proposition contained in the brief of appellant's counsel.

It is urged in argument in the brief of counsel as the predicate of the foregoing proposition that the appellee, Jordan, bound himself in the bond for $5,000 only, the bond itself being for $60,000; that the amount which he has paid out and makes the basis for his contribution is less than one-half the sum of $5,000. If the bond in question does not allow of this construction as its legal effect, it is needless to consider the validity of the abstract legal question which would arise under the facts supposed by the appellant's counsel.

It is true that it is laid down in Story on Contracts, section 886, thus: "So if it be agreed between the parties that each surety shall be responsible only for a stated portion of the whole sum, the right of contribution amongst the co-sureties cannot be enforced." Citing Pendleburg *v.* Walker, 4 Young & Coll., 424; Burge on Suretyship, 385.

Under no view of the record, however, is this hypothetical case fairly presented to us for consideration, for upon the general principles of law and equity upon which rests

the doctrine of contribution between sureties, the right to exact it exists if the contract of each is made a part of the other. See Story on Contracts, sec. 886, and 1 Story Eq. Jur., secs. 495, 498.

The official bond of Frank Derks, sheriff, and the nine persons who constituted the sureties thereon was, in substance, a joint obligation made by them, payable to the county court of Galveston county, in the "penal sum" of $60,000, for the payment of which well and truly to be made they bound themselves, their heirs, executors and administrators jointly and severally.

The conditions of said bond need not be set out in full, the same not being involved in controversy here. It is sufficient to say that it is in the usual and apparently proper form, and the statement of said conditions concludes the terms and specifications of said bond, which are followed by the signatures of the principal and said sureties, together with the approval thereof signed by each of the judges of said county court.

This instrument we construe and deem to be and hold that it embraces, and comprehends fully, completely and entirely, the contract and conditions intended to be evidenced by it.

Now, the argument presented in the brief of the appellant's counsel is founded upon an opposite conclusion with respect to the relation which this instrument bears to another which succeeds, and is apparently appended to or attached to it.

An instrument prepared and executed seemingly in compliance with the requirements of article 7613, Pasch. Dig., which is, viz.: "All persons offering themselves as security for a sheriff or justice of the peace shall append to their bond or accompany their recognizance with an affidavit that they are actually worth the amount for which they render themselves liable, over and above all their liabilities, and such affidavits shall set forth a description of their property, or so much thereof as will be sufficient to cover

the amount for which they bind themselves, and its value, and all incumbrances thereon of every nature."

The instrument referred to and which seems to have accompanied this bond is too lengthy to be here inserted in full; it is sufficient to say that it is prepared formally as far as the affidavit contemplated by the article above quoted, but the oath of the parties seems not to have been taken nor certified by the officer as having been taken; although the *jurat* appears in due form on the face and in the conclusion of the instrument, yet it is not signed as an affidavit by either parties or officer. Nor is it signed by the parties at all, but consists, in effect, of nothing more than a description of property designated with its value belonging to the securities respectively; who are named in the bond as such, with the statement "that they are each of them worth in property, subject under the laws to execution, the amount for which they each render themselves liable as sureties on said bond over and above all their separate liabilities; . . . that the following is a correct and true description of so much of their property as will be sufficient to cover the amount for which they bind themselves and the value thereof, and all incumbrances thereon of every nature."

This statement is succeeded by the several lists of the sureties respectively of certain of their property, real estate, with the respective values thereof attached, as has above already been indicated, which concludes and completes this instrument without signature of the parties to it or other action of the officer, namely, R. D. Johnson, notary public, than an acknowledgment before him by Frank Derks, sheriff, principal and said sureties, "that they had, each of them, executed, signed, sealed and delivered the foregoing bond for the purposes and considerations therein stated."

This acknowledgment can have reference and application to no other instrument than the bond itself, which, as has been seen, is complete within itself. The instrument which has just above been described, as the statute plainly shows,

can be held to be no more than an auxiliary instrument which the law contemplates shall accompany the bond as a necessary or proper precaution for the security of the state and county in obtaining sufficient bonds.

The bond contemplated by the statute must and does contain whatever conditions or limitations it is competent under the law may be prescribed in behalf of the sureties. The bond in this case contains none whatever in their behalf. The instrument contemplated by article 7613, P. D., is one according to the very terms of the statute itself, is separate and distinct from the bond, but is to be "appended to" or "may accompany" the bond, and the subject-matter of its provisions is other than the matter of the contract, but is purely collateral thereto. It provides merely for an affidavit concerning the value of the property of the sureties over and above all their liabilities, together with a description of such property; or in case that any surety or sureties may have seen proper to bind themselves for any specific or particular sum, it seems to be contemplated by the article referred to that the surety shall give a description of so much of his property only as shall be sufficient to cover the amount for which he or they may have bound themselves. Whatever may be the legal effect of this article in admitting sureties to bind themselves, or to disallow them in binding themselves for sums less than that required to be given in the bond by the principal, it is, nevertheless, clear that the affidavit and description contemplated by it to be appended to the bond does not constitute or form any part of the obligation and contract entered into by the parties signing the bond.

There is nothing, we conclude, to cast a doubt upon the proposition that the sureties were equally bound under the instruments signed by them construed in connection and with every favorable intendment with the instrument appended to said bond, and therefore that the proposition of appellant's counsel under the eighth, ninth and tenth assignments of error cannot be maintained.

The next ground of error relied upon by appellant's counsel in their brief relates to the alleged error in giving judgment against defendant for the fees of Walter Gresham, district attorney. It is sufficient to reply to this ground that there is sufficient legal evidence which warrants and supports the judgment rendered, without taking into account the item referred to and embraced in this assignment; and also that it does not necessarily appear that this item of account or charge was included by the court in the estimate of liability in favor of the plaintiff against the defendant. Without taking into the estimate the fees of office paid by the plaintiff to Walter Gresham, there appears from the other items claimed by the plaintiff as a proper subject for contribution, an amount greater than that for which judgment was rendered. The judgment was well supported by ample and competent evidence independently of the item complained of, as will be seen readily by the most cursory consideration of the facts in evidence.

The plaintiff was entitled to a *pro rata* reimbursement from those sureties who were solvent, of whom it was alleged, and there was evidence to show, there were but three besides the plaintiff (see De Colyar on Guaranties, etc., p. 349); the amount actually paid by plaintiff, aside from the fees of Gresham, amounted to more than $2,100, and the judgment rendered was for $514.49.

The next and last remaining ground relied upon by counsel for appellant is that the court erred in giving judgment for plaintiff for interest on the amount of the claims against the defendant as found by the court. Counsel cites authority to sustain this position. It is laid down by Burge on Suretyship, 387, citing cases, that a surety is not entitled to recover from his co-surety the interest on the money paid by him.

The doctrine of contribution rests rather upon the principle of general equity than upon legal rights springing from contract. De Colyar on Guaranties, p. 339 and note. It was formerly held in equity that a surety could not claim

interest on the money paid by him or on any part thereof (see Oange *v.* Twelock, 2 Molloy, 44; Bell *v.* Free, 1 Swanst., 90); but in a note on De Colyar on Guaranties, page .350, note 3, it is said there is no doubt now that interest is recoverable, citing Swann *v.* Wall., 1 Ch. Rep., 81; Lawsan *v.* Wright, 1 Cox, Ch. Cas., 275, 277; Pete *v.* Duncan, 15 Jur., 86; 20 L. J. (N. S.) Q. B., 221.

This latter conclusion we incline to adopt as being in accord with a proper equitable construction of the rights of the parties and in harmony with the spirit of both law and equity. See, also, Hicks *v.* Bailey, 16 Tex., 232, and Jordan *v.* Hudson's Executors, 11 Tex., 82.

AFFIRMED.