JOHN W. CRISFIELD *vs.* THE STATE OF MARYLAND, at the instance and for the use of HENRIETTA M. HANDY, use of MARY E. HANDY, use of LEVIN WOOLFORD.

*Liability of a Bankrupt for a Debt due by him as Executor— Fiduciary Debts—Remedy of a Surety on such Executor's Bond against whom judgment has been obtained and paid, by Action of Indebitatus Assumpsit against the Principal Debtor—Remedy on the Bond in Equity—Construction of the U. S. Bankrupt Act, and of Art. 9 of the Code.*

Suit was brought on the bond of C., as executor of H., to recover an amount claimed to be due the equitable plaintiff as legatee under H's will. Shortly after suit brought, C. was adjudged a bankrupt, and among other claims proved against the estate was that sued on. Subsequently the Court below directed a stay as against C. pending the proceedings in bankruptcy. The suit was entered to the use of M. E. H., and judgment recovered against the sureties on the bond. The amount recovered was paid by W., one of the sureties, and the equitable plaintiff's assignee assigned the judgment and cause of action to W. On motion of the plaintiff the suit was brought forward and the stay as to C. stricken out. Pleas were filed by C., to some of which the plaintiff demurred, and upon others issues were joined. HELD:

1st. That C's discharge in bankruptcy did not release him from liability for the debt due by him as executor to the equitable plaintiff as legatee.

2nd. That neither at common law nor under Art. 9 of the Code, could W. maintain an action on the bond against C. to recover the money paid by him, as the payment operated at law as an extinguishment of the bond; that his remedy at law was an action of *indebitatus assumpsit* against B. for money paid to his use.

3rd. That in equity the payment by W. did not operate as a satisfaction or extinguishment of the bond, and that by such payment W. was entitled in equity to be subrogated to all the rights and remedies and securities which the plaintiff as creditor held against C.

The fact that money due to a *cestui que trust* is allowed to remain in a trustee's hands with the consent of the *cestui que trust,* does not change the nature of the debt itself. It still remains a debt due by the trustee in his character as trustee.

APPEAL from the Circuit Court for Somerset County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Henry Page* and *William H. Tuck,* for the appellant.

*John H. Handy,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is a suit on the bond of John W. Crisfield, executor of Samuel K. Handy, to recover a sum of money claimed to be due the equitable plaintiff, as residuary legatee under the will of the testator.

A few days after the institution of the suit, the defendant, Crisfield, was adjudicated a bankrupt, and among other claims proved against the bankrupt estate, was that set forth in the breach assigned in plaintiff's declaration.

Subsequently, the Court of its own motion directed a stay of proceedings as against the bankrupt, now the appellant in this case.

The suit was afterwards entered to the use of Mary E. Handy, and judgment was recovered against Levin Woolford and William W. Wise, *sureties on the bond of the appellant as executor,* for $2561.79.

The amount thus recovered by the judgment was subsequently paid by Woolford as surety, and the assignee of the equitable plaintiff assigned the judgment and cause

of action to the said Woolford, and directed the clerk of the Court to make entry of same.

On motion of the plaintiff the Court directed the suit to be brought forward, and the stay theretofore entered as to Crisfield to be stricken out.

Sundry pleas were then filed by the defendant, to some of which the plaintiff demurred, and upon others issues were joined. The cause was tried before the Court and judgment was recovered for $4003.21.

In the view we take of this case, the only questions necessary to be considered are :—

1st. Whether the appellant's *discharge in bankruptcy* releases him from liability for a debt due by him *as executor to the equitable plaintiff as legatee ?*

2nd. If not, whether upon the payment of said debt by Woolford, a surety on the executor's bond, he can maintain *an action at law on the bond* against Crisfield, the principal, to recover the money thus paid?

The first question depends upon the construction of sec. 33 of the Bankrupt Act, which provides : " that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character shall be discharged, but the debt may be proved, and the dividend thereon shall be a payment on account of such debt."

Is then the debt due by the appellant as executor to the equitable plaintiff as legatee, a *fiduciary debt?* And this seems to us too plain for contention. A fiduciary debt is one founded or arising upon some confidence or trust as distinguished from a debt founded simply upon contract. And an executor is one to whom is confided by last will and testament the personal estate of the testator, to be held and administered by him in pursuance of the will of the testator and the rights of all parties in interest. If a trustee in the broadest meaning of that term, is a person in whom some estate, interest or power affecting property,

is vested to be *held, used or exercised for* the *benefit of another*, then the office of an executor is to all intents and purposes a trust, to be held and exercised by him for the benefit of creditors, legatees, and parties entitled to distribution. And for the proper administration of the trust he always has been held amenable alike to Courts of law and equity.

In the Bankrupt Act of 1841, debts due by executors were in express terms recognized as fiduciary debts, the language of the Act excepting such debts from the operation of law being, " All persons owing debts created in consequence of defalcation as a public officer or as executor, administrator, guardian, or trustee, or while acting in *any other* fiduciary capacity."

It was unnecessary to enumerate specifically such debts in the Act of 1867, because they had both by legislative and judicial construction received a fixed and determinate meaning. The debt due by Crisfield, executor, was therefore in our opinion a fiduciary debt, from the payment of which he was not released by his discharge in bankruptcy.

Nor does it seem to us that the facts set forth in the appellant's eighth plea, in any manner change the nature or character of the debt. This plea alleges that the appellant offered and was ready to pay the debt due the plaintiff, but that at her instance and request, it remained in his hands with the understanding, he was to pay to her interest on the same and such parts of the principal as might be necessary for her support, and the residue upon reasonable notice. This plea is not set up by the sureties on the bond, but by the executor himself. The fact that money due to a *cestui que trust* is allowed to remain in the hands of a trustee with the consent of the *cestui que trust*, does not change the nature of the debt itself. It still remains a debt due by the trustee in his character as trustee.

We come now to the second question. The original suit was brought on the joint and several bond of *Crisfield*

*the appellant, Woolford and Wise.* Judgment was recovered against Woolford and Wise, and further proceedings were stayed as to Crisfield pending the proceedings in bankruptcy. The judgment was subsequently paid by Woolford, one of the sureties, and the question now is, whether he can maintain an *action at law on the bond* against Crisfield the principal, to recover the money thus paid by him.

And here we are met with the well settled principle of the common law, that the payment by a surety of a debt due on a joint and several bond, is a satisfaction, or as expressed in some of the cases an extinguishment of the bond, and that no action can be maintained on the bond for the recovery of the money thus paid.

The remedy of the surety in such cases, is an action of *indebitatus assumpsit* against the principal, to recover the entire amount paid, or against the co-sureties for contribution. *Carroll vs. Bowie*, 7 *Gill*, 38.

If this be so, then it is clear that no action will lie *at law on the bond*, at the instance of Woolford the surety against Crisfield the principal, unless this case comes within the provisions of Art. 9 of the Code.

The first section it is true, provided that the assignee of any bond or *chose in action,* for the payment of money, or any legacy may maintain an action in his own name against the debtor, in the same manner as the assignor might have done before the assignment.

This section is a codification of the Act of 1829, ch. 51, and was passed to enable assignees in such cases, to sue in their names, but it has no reference to a case like the one before us, in which the assignee is a *joint debtor,* and in which the payment was made not in the character of *purchaser* of the bond or legacy, *but as surety.* Under such circumstances how can the appellee maintain an action on the bond in the same manner as the plaintiff the assignor? In the first place, Woolford is one of the obligors, and he

cannot of course sue himself. Then again, Wise, another party to the bond, is a co-obligor, and both Wise and himself are in fact sureties, and the appellant is the principal. The equitable plaintiff could proceed and recover judgment against all the parties to the bond, Woolford as assignee, could not under any circumstances recover of Wise a co-surety more than his contributory part, and he could not therefore maintain an action in his own name as the assignor might have done before the assignment.

From the above tenor and purpose of the section it is obvious that it does not contemplate or authorize assignments between parties to the same bond, but only intends to authorize strangers to the debt to recover on such assignments, and by virtue thereof to sue in their own names, as a matter of convenience.

The only section in this Article it seems to us, upon which an argument can be based, iu support of the appellees' contention is the fifth, which provides, " That the surety on any bond or other obligation for the payment of money or promissory note, or the endorser of any protested bill of exchange, who shall pay or tender the money due thereon, whether the whole be due or part has been previously paid, shall be entitled to an assignment thereof, and may by virtue of such assignment maintain an action in his own name against the principal debtor."

The language of the statute it will be observed is *"bond or other obligation·for the payment of money,"* and in this respect it differs materially from the Statute of 19 and 20 Vic., ch. 97, sec. 5, which provides, that " every person who being surety for the debt or *duty of another*, or being liable with another for any debt or duty, shall pay such debt or perform such duty, shall be entitled to have assigned to him · * * * * and shall be entitled to stand in the place of the creditor in any action or other proceeding at law or in equity."

The bond in this case is for the performance of a duty, and not for the payment of money. Its condition is, that the appellant, Crisfield, shall faithfully discharge the duties of the office of executor according to law. The State of Maryland is the obligee in the bond, and is the legal plaintiff in a suit upon the same, and the equitable plaintiff, the party to whose use the suit is brought, must assign and must recover upon the assignment of breaches. The recovery by such equitable plaintiff, does not however merge the bond in the judgment. It still remains as a security for all other persons interested in the estate of the testator, and upon which such persons may institute proceedings upon the failure of the executor to discharge his duty.

Such a bond is not therefore a bond for the payment of money, of which a surety is entitled to an assignment under this section, and by virtue of which he may maintain an action in his own name against the principal debtor.

It follows from what we have said, that neither at common law, nor under the statute, can Woolford maintain *an action on the bond* against Crisfield, the principal debtor, to recover the money paid by him as surety, because such payment operates at law as an *extinguishment of* the bond.

But, though such is the rule at common law, it by no means follows that such is the effect of a payment by a surety on a joint and several bond in equity. On the contrary, where one is obliged as surety to pay the debt of another, an equity arises in his favor to have all the rights and remedies, securities original and collateral, which the creditor may have or hold against the principal debtor, transferred to him; and to avail himself of them as fully as the creditor could have done, to the end that he may obtain full indemnity from the principal debtor. In other words, the surety is entitled to stand in the

shoes of the creditor whose debt he has been obliged to pay.

The right of the surety to be thus subrogated to all the rights of the creditor is not founded on contract, but upon the plainest principles of natural justice; and is adopted by Courts of equity to compel the ultimate discharge of a debt by one who in equity and good conscience ought to pay it.

The doctrine of *Copes vs. Middleton,* 1 *Lur. & Russ.,* 226, that the payment by a surety of a debt due on a joint bond operates as an extinguishment of the bond in a Court of equity, is, against the earlier English decisions and against the civil law, and has not as a general rule been adopted in this country. On the contrary, the great weight of American authority is against it; we deem it unnecessary to examine the many cases in which the subject has been considered, because they are reviewed at length in the notes to the case of *Dering vs. Earl of Winchelsea,* 1 *White & Tudor's Leading Cases, Part* 1, 178.

We may add, however, that the doctrine of *Copes vs. Middleton,* is no longer the law in England. The Statute of 19 and 20 Victoria, provides expressly, that in all cases where the surety pays the debt of another, he shall be entitled to assignment, and shall be entitled to stand in the place of the creditor in any action or other proceeding at law or in equity. Whatever then may be the effect of the payment by Woolford as surety in a Court of law, we are of opinion that such payment does not operate as a satisfaction or extinguishment of the bond in equity; and that by such payment, he is entitled in equity to be subrogated *to all the rights and remedies and securities, which the plaintiffs as creditors held against the appellant, the principal debtor.*

As no action however can be maintained *at law* upon the *bond itself,* we must reverse the judgment below, without awarding a new trial. The appellees' remedy

*at law* is an action against the appellant, *for money paid* to his use.

*Judgment reversed, without*

*awarding new trial.*

(Decided 17th December, 1880.)